**CARIBOU BOARD OF EDUCATION
et al.**

**v.**

**CARIBOU TEACHERS ASSOCIATION.**

Supreme Judicial Court of Maine.

July 19, 1979.

Ellsworth T. Rundlett, III (orally), Portland, Ferris A. Freme, Caribou, for plaintiffs.

Sunenblick, Fontaine & Reben by Donald F. Fontaine (orally), Portland, for defendant.

Before WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

For the third time in the twelve years since the enactment in Maine of the Uniform Arbitration Act (14 M.R.S.A. § 5927–5949 [Supp.1978]) we have before us an appeal in which the central issue is whether the arbitrator exceeded his authority and violated the provisions of Section 5938(1)(C) of the Act.

The Plaintiffs, the Caribou Board of Education, the individual members of that Board, and the Superintendent of Schools in that Aroostook County city, brought this appeal from an order of Superior Court, dated November 13, 1978, denying their application to vacate, modify or correct an arbitration award made August 23, 1976. Instead the Superior Court confirmed that award.

The Plaintiffs assert that not only did the arbitrator exceed his authority under 14 M.R.S.A. § 5938(1)(C), but that the question submitted to arbitration was a matter of educational policy and, therefore, not subject to arbitration.

We sustain the appeal.

The Plaintiff Board of Education and the Defendant, Caribou Teachers Association, had entered into a collective bargaining agreement for the school year 1975–1976. Article XXVI of that agreement provided in part:

A) The Board and The Association recognize that an adequate number of competent specialists is essential to the operation of an effective educational program. Accordingly, by the beginning of the 1975–1976 school year, there shall be the following specialists:

1. Elementary Schools:
   Art Teacher
   Music Teacher

During the school year both art and music were elements of the kindergarten curriculum in the Caribou schools. However, the Plaintiff Board of Education provided no

art specialist in the kindergarten. A music specialist taught in the kindergarten every other week for twenty minutes.

The present dispute arises out of the decision of the Plaintiff Board of Education in November of 1975 to discontinue instruction by the music specialist at the kindergarten level. The Board of Education unilaterally concluded that the services of the music specialist would be more effective if concentrated in grades 1–4. This action was taken without prior consultation with the Teachers Association.

A kindergarten teacher complained that the failure to have an art specialist and the discontinuance of instruction of a music specialist in kindergarten violated the provision of the collective bargaining agreement set out above. After the School Superintendent and the Board of Education denied her any redress on her grievance,[1] the Teachers Association sought binding arbitration pursuant to the terms of their agreement.

Ultimately[2] the arbitrator concluded that the grievance was properly subject to arbitration and that Article XXVI was not an impermissible delegation of the Board's duty to set education policy. He further concluded that the "number, deployment and exact teaching roles of specialists are matters which, by necessary implication, Article XXVI commits to negotiations between the parties . . . ."[3] As a remedy for the refusal to negotiate with respect to deployment of specialists the arbitrator ordered that instruction by the music specialist in kindergarten be reinstated and that the Board of Education thereafter refrain from changing the assignment of spe-

cialists without prior negotiation with the Teachers Association.

When the Superior Court on November 13, 1978, confirmed the arbitrator's award pursuant to § 5938(4) of the Uniform Arbitration Act, it grounded its confirmation upon a conclusion that the arbitrator had not gone beyond the terms of the parties' collective bargaining agreement.

■■■ We have heretofore observed that the interpretation of collective bargaining agreements and the meaning to be applied to specific terms therein are ordinarily the responsibility of the arbitrator. *Board of Directors of Me. Sch. Admin. Dist. No. 75 v. Merrymeeting Educators' Ass'n.*, Me., 354 A.2d 169, 170 (1976). *See also United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424, 1429 (1960).

The arbitrator, however, may not travel outside the agreement in reaching a conclusion, because if he does so, instead of interpreting and applying the collective bargaining agreement, he would then be basing his conclusion on his own individual concept of justice in the particular area involved. *Board of Directors of Me. Sch. Admin. Dist. No. 75 v. Merrymeeting Educators' Ass'n.*, *supra*, at 170–71; *Superintending Sch. Comm. v. Portland Teachers' Ass'n*, Me., 338 A.2d 155, 157 (1975). An arbitrator's function is confined to interpretation and application of the collective bargaining agreement. He does not sit to dispense his own brand of justice. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, *supra*, at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428; *see also Alexander v. Gardner-Den-*

---

1. "Grievance" is defined in Article III(B)(1) of the collective bargaining agreement as:

    "an alleged violation of this agreement or any dispute with respect to its meaning or application."

2. The Board of Education initially refused to enter voluntarily into grievance arbitration. Upon motion of the Respondent the Superior Court ordered arbitration, concluding that the matter of specialist teachers was included in the agreement and, therefore, subject to arbitration.

3. The arbitrator went on to state in his opinion:
    "[I]t is more constructive for sound education for the parties to bargain over these matters prior to any arbitration review. The Board violated this necessarily implicit obligation to bargain when it unilaterally instituted the November, 1975, changes without first bargaining with the Association. The Board's consultation with individual kindergarten teachers bypassed the Association as the contractual bargaining agent and aggrevated [sic] the seriousness of the violation."

ver Co., 415 U.S. 36, 53, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147, 161 (1974).

■ Absent a provision, express or implied, in the agreement or in the relevant statutes from which the arbitrator may derive his power, his award will be found to be in excess of authority. *Boston Teachers Union, Local 66 v. School Comm. of Boston,* 370 Mass. 455, 350 N.E.2d 707, 716 (1976); *Doherty v. School Comm. of Boston,* 363 Mass. 885, 297 N.E.2d 494, 495 (1973).

■ With reference to the collective bargaining agreements of public employers the Legislature has ordained that an arbitrator has "no authority to add to, subtract from or modify the collective bargaining agreement." 26 M.R.S.A. § 970 (1964). This arbitrator's award, accordingly, may stand only so far as its essence is drawn from the agreement of the parties. If this award can in any rational way be derived from the agreement, viewed in the light of its language, its context and any other indicia of the parties' intention, it will be upheld. Only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award. *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969).

■ In making the determination whether an arbitrator has exceeded his authority the agreement must be broadly construed, and all doubts will usually be resolved in favor of his authority. *Western Iowa Pork Co. v. National Bhd. Packinghouse & Dairy Wkrs., Local No. 52,* 366 F.2d 275, 277 (8th Cir. 1966).[4]

■ Whether an arbitrator has exceeded his power is always open to review. *Board of Directors of Me. Sch. Admin. Dist. No. 33 v. Teachers Ass'n. of Me. Sch. Admin. Dist. No. 33,* Me., 395 A.2d 461, 463 (1978). An application to compel or stay arbitration under § 5928 of the Uniform Arbitration Act does not preclude a subsequent review of the scope of the arbitrator's authority.

■ In the case before us a careful reading of the collective bargaining agreement between the parties compels us to conclude that the arbitrator has exceeded his powers by traveling outside the terms of the agreement in reaching the conclusion which is challenged on this appeal.

To require negotiation prior to any change in the deployment of teachers is to import a procedure which has no basis in this agreement. That the arbitrator acted beyond the scope of his authority by applying his own brand of justice to this dispute manifests itself in his statement that ". . . it is more constructive for sound education for the parties to bargain over these matters prior to any arbitration review."

At that point the arbitrator was not interpreting or applying the agreement before him, nor was he determining the rights of the parties under the agreement then in force. *City Electric, Inc., v. Local Union 77, Int'l Bhd. of Elec. Wkrs.,* 517 F.2d 616, 619 (9th Cir. 1975), *cert. den'd.,* 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 127 (1975). Rather, at that point the arbitrator was applying his own philosophy of labor relations to add to the agreement between the parties. To that extent his award must be vacated.[5]

See also Block, *Labor Arbitration's Crossroad Revisited: The Role of the Arbitrator and the Response of the Courts,* 47 *U.Cinn.L.Rev.* 363 (1978); Comment, 52 *Tulane L.Rev.* 862 (1978); Comment, 23 *U.C.L.A.L.Rev.* 936 (1976).

4. The question we address is whether the construction given the collective bargaining agreement is a reasonably possible one in the setting in which this contract was made. It becomes our duty to vacate the arbitrator's award "if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator was not possible under a fair interpretation of the contract." Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act,* 10 *Vand.L.Rev.* 685, 706 (1957).

5. In a case also decided this day, *Westbrook School Comm. v. Westbrook Teachers Ass'n,* Me., 404 A.2d 204 (July, 1979), we have reached a different result but we have applied identical rules.

As we move on we must draw with the utmost clarity the line between arbitrable and non-arbitrable matters in the context of this appeal.

The issue before us is not whether art and music shall be taught as a part of the curriculum in Caribou. That question may well be one of educational policy and, if so, under the provisions of 26 M.R.S.A. § 965(1)(C) (1964), neither negotiable nor arbitrable.

■ Rather, the issue before us is, once art and music are made part of the curriculum, who shall teach those subjects in the Caribou kindergarten. This question is an arbitrable one. *City of Biddeford v. Biddeford Teachers Ass'n.*, Me., 304 A.2d 387, 422–23 (Wernick, J.) (use of specialist teachers is proper subject for binding arbitration).

Thus the arbitrator did not exceed his authority when he determined that the deployment of these specialist teachers in the Caribou schools was governed by Article XXVI of the collective bargaining agreement. The manner of their deployment had a direct bearing on the adequacy of the number of these specialist teachers and on the working conditions of the teachers generally. *Id.*

It being within his authority to make that determination, the arbitrator declined to decide whether the Plaintiff Board of Education had breached the collective bargaining agreement when it failed to assign art and music teachers to the kindergarten in Caribou. This case must go back to the arbitrator for his consideration of this question pursuant to § 5938(3) of the Uniform Arbitration Act. It is for the arbitrator, and not the court, to decide in the first instance whether the Board's action complied with, or violated, the provision of Article XXVI for an "adequate number" of these specialist teachers.

The entry is:

Appeal sustained,

Order confirming arbitrator's award vacated.

Remanded to Superior Court for further proceedings consistent with the opinion herein.

McKUSICK, C. J., and POMEROY and DELAHANTY, JJ., did not sit.