WESTBROOK SCHOOL COMMITTEE

v.

WESTBROOK TEACHERS
ASSOCIATION.

Supreme Judicial Court of Maine.

July 19, 1979.

Gagan & Desmond by James E. Gagan (orally), Michael D. Cooper, Westbrook, for plaintiff.

Sunenblick, Fontaine & Reben by Stephen P. Sunenblick (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

The Westbrook Teachers Association (hereafter "Association") appeals from a decision of the Superior Court vacating an arbitrator's award which ordered the Westbrook School Committee (hereafter "Committee") to reinstate Association member Philip J. Dawson to his regular teaching position as full-time guidance counselor and to his extracurricular position as head football coach at Westbrook High School. The questions on appeal are (1) whether the Superior Court erred in finding that the dispute over the nonrenewal of Dawson's

coaching contract was not arbitrable under the collective bargaining agreement (hereafter "Contract") between the Association and the Committee; and (2) whether, if the dispute was arbitrable, the Superior Court erred in vacating the arbitrator's decision on the merits. Since we answer both questions in the affirmative, we sustain the appeal and reverse the Superior Court's order vacating the arbitrator's award.

Dawson has been employed at Westbrook High School since 1968. In addition to his regular teaching duties—as a guidance counselor and, after 1975, as also the part-time athletic director—Dawson served until the 1978–79 school year as head football coach under separate single-year contracts for extracurricular assignments. Dawson achieved continuing contract teacher status [1] in 1971; and in May 1978, in order to protect his teaching job, he signed a continuing teachers contract that covered his employment for two years as guidance counselor and athletic director, each half time. However, the Committee refused to renew Dawson's extracurricular contract for his services as football coach for 1978–79. Dawson protested and, pursuant to Article III(D)(4) of the Contract, the Association submitted his grievance to arbitration.[2]

On June 15, 1978, the arbitrator held a hearing for receiving evidence. At the outset of the hearing, the arbitrator overruled the Committee's objection that the dispute over the nonrenewal of Dawson's coaching contract was not arbitrable. In his subsequent decision, the arbitrator ruled that the Committee had violated Articles VI(B) and XIV of the Contract because it lacked "just cause" for refusing to renew Dawson's extracurricular coaching contract. The arbitrator ordered Dawson reinstated to a regular teaching position as full-time guidance counselor and to an extracurricular position as football coach.

Upon motion of the Committee, the Superior Court vacated the arbitrator's award pursuant to 14 M.R.S.A. § 5938 (Supp.1978–79). The Association now appeals the Superior Court's decision.

## I. The Superior Court and Arbitration

This case raises in sharp relief the question of what limitations exist on the Superior Court's role in supervising, or reviewing the results of, arbitration—an extrajudicial forum for dispute resolution selected by mutual consent of the parties. A generalized review of the applicable law will aid in the proper disposition of this particular appeal.[3]

The Uniform Arbitration Act (hereafter "Act"), 14 M.R.S.A. §§ 5927–49 (Supp.1978–79), defines the part the Superior Court is empowered to play in the arbitration process.[4] See Lewiston Firefighters

---

1. Under 20 M.R.S.A. § 161(5) (Supp.1978), a teacher becomes a continuing contract teacher after a "probationary period of not to exceed 2 years." The contracts of such teachers are automatically renewed for a period of one year unless the "teacher receives written notice to the contrary at least 6 months before the terminal date of the contract . . . ."

2. The contract provided that the Association could take a grievance to arbitration after having exhausted formal proceedings before the school principal [Art. III(D)(1)], the superintendent [Art. III(D)(2)], and the school committee [Art. III(D)(3)].

3. The function of the Law Court vis-à-vis arbitration is removed from that process one step further than the Superior Court's role. As an appellate court reviewing the judgments of the Superior Court, the Law Court merely examines the trial court's action or inaction in order to find and correct any error of law committed by the court. In the discussion that follows, "court" refers to the Superior Court.

4. Section 5938 of the Uniform Arbitration Act provides in pertinent part:

"§ 5938. Vacating an award

"1. Vacating award. Upon application of a party, the court shall vacate an award where:

"A. The award was procured by corruption, fraud or other undue means;

"B. There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"C. The arbitrators exceeded their powers;

"D. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the pro-

*Ass'n v. City of Lewiston,* Me., 354 A.2d 154, 164 (1976). Under the provisions of the Act, the court may be called upon both to determine substantive arbitrability, *i. e.,* whether the parties intended to submit a particular dispute to arbitration, sections 5928, 5938(1)(E), and also to determine whether in deciding the submitted dispute the arbitrator exceeded his powers, section 5938(1)(C).

The question of substantive arbitrability may be raised at either of two junctures in the arbitration process. First, prior to the grant of an arbitrator's award, either party may apply to the court for an order to compel arbitration where one party refuses to proceed, section 5928(1), or to stay an arbitration proceeding that has been "commenced or threatened," section 5928(2). Second, assuming that the issue has not been adversely determined on a motion pursuant to section 5928 to compel or stay arbitration, a party who "did not participate in the arbitration hearing without raising the objection" may raise the arbitrability issue on a motion to vacate an award after it has been rendered by the arbitrator, section 5938(1)(E).

■ Whenever raised, the issue presented is the same: Did the parties intend to submit the particular dispute to arbitration? It is well settled that the final decision on the question of substantive arbitrability is the function of the court, not of the arbitrator. *Lewiston Firefighters Ass'n v. City of Lewiston, supra* at 165. *See United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). To hold otherwise would be to give the arbitrator the extraordinary power of determining his own jurisdiction, to the exclusion of the courts or any other authority.[5]

■ In determining the question of substantive arbitrability, the court may divine the intent of the parties from all the traditional sources consulted in contract interpretation. However, the Maine legislature's strong policy favoring arbitration[6]

visions of section 5931, as to prejudice substantially the rights of a party;

"E. There was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection; or

"F. The award was not made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court has ordered, and the party has not waived the objection;

"But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

Since this case concerned only sections 5938(1)(C) and (E), the other grounds for vacating an award will not be discussed.

Further, it should be noted that subdivisions (C) and (E) of section 5938 are, to a limited extent, overlapping. In an article analyzing the Uniform Arbitration Act, Dean Maynard E. Pirsig, chairman of the committee of the National Conference of Commissioners on Uniform State Laws that drafted the Act, explained: "If there has been no arbitration agreement, the arbitrators, of course, have no power to render an award. But even if there has been such agreement, the arbitrators may have gone outside of it in their award or beyond the dispute submitted to them. They would have again exceeded their powers." M. Pirsig, "Some Comments on Arbitration Legisla-

tion and the Uniform Act," 10 *Vand.L.Rev.* 685, 705 (1957).

In other words, if a court finds that there is no arbitration agreement under section 5938(1)(E), then an arbitrator who nonetheless has proceeded to resolve a particular dispute has exceeded his powers. However, as discussed in detail in the text, even if the parties have agreed to arbitrate the dispute, the arbitrator may not "exceed his powers" by "travelling outside of the agreement" in making his award.

5. Anyone who claims that the parties to the arbitration agreement vested power in the arbitrator to make a final determination of substantive arbitrability, to the exclusion of the courts, "must bear the burden of a clear demonstration of that purpose." *See United Steelworkers v. Warrior & Gulf Navigation Co., supra* at 583 n. 7, 80 S.Ct. at 1353.

6. In *Lewiston Firefighters Ass'n v. City of Lewiston, supra,* 354 A.2d at 165–66, the court traced the presumption of arbitrability to the Maine legislature's "recognition that arbitration is the 'desirable method' for settling contract disputes" under the Maine Public Employees Labor Relations law (26 M.R.S.A. § 961 *et seq.*) as reflected in section 979–D thereof, which makes contract grievance procedures a mandatory subject of bargaining.

dictates a conclusion that the dispute has been subjected to arbitration if the parties have generally agreed to arbitrate disputes and if "the party seeking arbitration is making a claim which, *on its face,* is governed by the collective bargaining contract."[7] (Emphasis in original) *Lewiston Firefighters Ass'n v. City of Lewiston, supra,* 354 A.2d at 165. By an alternative formulation it has been held that a court will find a dispute arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 582–83, 80 S.Ct. at 1353.

The issue of whether an arbitrator exceeded his powers in making an award poses an entirely different question for this court. This issue, raised by a motion to vacate under section 5938(1)(C),[8] relates not to arbitrability of the dispute, but rather to the way the arbitrator decided the merits of the dispute. Most commonly, as in the case at bar, the arbitrator's decision on the merits involves his construction of the contract under which the dispute arose; and for the court to resolve the question whether the arbitrator's award exceeded his powers, the court necessarily must itself construe that same contract. However, unlike the determination of substantive arbitrability, construction of the contract for the purpose of deciding the merits of a dispute is ordinarily a task for the arbitrator, not the court. *Lewiston Firefighters Ass'n v. City of Lewiston, supra,* 354 A.2d at 165; *School Administrative Dist. No. 75 v. Merrymeeting Educators' Ass'n,* Me., 354 A.2d 169, 170 (1976). Even though construction of a contract is a question of law and decision of legal questions is archetypically the work of courts, a number of reasons justify giving judicial deference to the arbitrator's construction of the contract. First, as noted in *School Administrative Dist. No. 33 v. Teachers' Ass'n,* Me., 395 A.2d 461, 462 (1978), the arbitration process must offer "the prospect of finality" to retain its vitality as a "dispute settlement mechanism" in the complex area of labor relations. Second, the interest in achieving a fair resolution of a labor dispute dictates considerable respect for the arbitrator's decision. The arbitrator "is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. . . The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed." *Lewiston Firefighters Ass'n v. City of Lewiston, supra,* 354 A.2d at 165, quoting *United Steelworkers v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 582, 80 S.Ct. at 1352–53. Finally, the parties choose the arbitrator and should, except under unusual circumstances, be bound by his interpretation of the contract. "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). *See School Administrative Dist. No. 33 v. Teachers' Ass'n, supra,* 395 A.2d at 463.

We do not mean to say, however, that the parties have no recourse if an arbitrator acts arbitrarily or capriciously in deciding the merits. The four corners of the contract define the limits of the arbitrator's authority, and, in the absence of an express provision to the contrary, it must be assumed that the parties did not intend the

---

7. Of course, a provision expressly excluding a particular dispute from arbitration must be honored. *See Superintending School Comm. v. Portland Teachers' Ass'n,* Me., 338 A.2d 155, 157–58 (1975).

8. The issue can, of course, be raised pursuant to section 5938(1)(C) only after the arbitrator has rendered his award.

arbitrator to go beyond the bounds of the contract. "[A]rbitrators may not travel outside the agreement in reaching a conclusion since, if they did so, they would not be interpreting and applying the contract but basing· their conclusion on their own individual concept of industrial justice in the particular area involved."[9] *School Administrative Dist. No. 75 v. Merrymeeting Educators' Ass'n, supra,* 354 A.2d at 170–71.

The standard of review to be employed by a court in determining whether an arbitrator has "travelled outside the agreement" has been variously expressed. The interests in finality and in assuring an informed disposition of the dispute dictate that judicial review be narrow indeed. Accordingly, courts have stated that an award will be vacated only if the arbitrator's award evidences "manifest disregard" for the terms of the contract, *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3rd· Cir. 1969); or the arbitrator's reasoning is "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling," *Safeway Stores v. American Bakery & Con. W.I.U., Local 111,* 390 F.2d 79, 82 (5th Cir. 1968). *See also Mistletoe Express Service v. Motor Expressmen's Union,* 566 F.2d 692 (10th Cir. 1977) (award will be vacated only if "no rational inference" from the record supports arbitrator's decision); *San Francisco-Oakland Newspaper Guild v. Tribune Pub. Co.,* 407 F.2d 1327, 1328 (9th Cir. 1969) (award will not be vacated if "it is possible for an honest intellect to interpret the words of the contract and reach the result which the arbitrator reached"); *University of Alaska v. Modern Constr. Inc.,* Alaska, 522 P.2d 1132, 1137 (1974). *See* Note,

"Commercial Arbitration—Scope of Judicial Review of Error of Law or Fact," 52 *Tulane L.Rev.* 862 (1978); Bloch, "Labor Arbitration Crossroads Revisited: The Role of the Arbitrator and the Response of the Courts," 47 *U. of Cinn.L.Rev.* 363 (1978). *Contra, Harrison v. Chrysler Corp.,* 558 F.2d 1273 (7th Cir. 1977); *Smitty's Super-Valu, Inc. v. Pasqualetti,* 22 Ariz.App. 178, 525 P.2d 309 (1974).

■ While a court will not substitute its judgment for that of an arbitrator, it will conclude that the arbitrator exceeded his powers by travelling outside the agreement, and will therefore refuse to enforce the arbitrator's award, if it finds no rational construction of the contract that can support the award. Stated affirmatively, "if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator[s] was not possible under a fair interpretation of the contract, then the court will be bound to vacate or refuse to confirm the award." *University of Alaska v. Modern Constr. Co., supra,* 522 P.2d at 1137, quoting M. Pirsig, "Some Comments on Arbitration Legislation and the Uniform Act," 10 *Vand.L.Rev.* 685, 706 (1957), see n. 3 above.

It now remains for us to apply these general principles to the case at hand—in regard to both the arbitrability of Dawson's grievance and the merits of the arbitrator's decision in his favor.

## II.  *Arbitrability of the Present Dispute*

■ The Contract between the Committee and the Association includes a general agreement to submit to arbitration any dis-

---

9. In *United Steelworkers v. Enterprise Wheel & Car Co.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960), Justice Douglas defined the limited role of the courts in reviewing the merits of an arbitration award as follows:

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never

have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

pute still unresolved after the first three formal levels of grievance procedure. Article III(D)(4)(A) and (B) provide:

"A. If the aggrieved person is not satisfied with the disposition of his grievance by Level Three [appeal to the School Committee], or if no decision has been rendered within six (6) days after he has first met with the School Committee, he may, within three (3) days after a decision by the Committee or six (6) days after he has first met with the Committee, whichever is sooner, make a written request of the president of the WTA to submit his grievance to arbitration.

"B. The Association may, within five (5) days after receipt of such request, submit the grievance to arbitration by written notice to the Committee."

There is no provision in the Contract that expressly excludes any particular dispute from arbitration. However, the "General" section of Article III does restrict the arbitrator's jurisdiction to grievances which emerge from the language of the Contract:

"A. Grievances that do not arise from the language of this Agreement, or an alleged breach thereof, may be processed through to Level Three [the School Committee], but will not be arbitrable."

Before the arbitrator, the Committee objected to his hearing the dispute on the ground that the nonrenewal of an extracurricular contract, as opposed to a regular teaching contract, was not arbitrable. The arbitrator overruled the objection, finding that Articles VI(B) and XIV of the Contract governed the dispute. The Superior Court vacated the arbitration award, finding that the parties never intended the provisions of the Contract to apply to continuing contract teachers acting in extracurricular capacities.

In essence, in deciding the issue of substantive arbitrability, the Superior Court had to answer the following question: Were Article VI(B), which provides that the Committee cannot refuse to renew the contract of a continuing contract teacher without "just cause," and Article XIV, which gives a preference to members of the bargaining unit in filling vacancies, intended by the parties to apply to extracurricular as well as regular teaching contracts and vacancies? In our judgment, the Superior Court erred in answering this question in the negative for purposes of determining substantive arbitrability. We are compelled to conclude that the Superior Court did not give adequate regard to the general rules for determining arbitrability that flow from the strong legislative policy favoring arbitration. We cannot square a holding here of nonarbitrability with the mandates that "[d]oubts should be resolved in favor of coverage" and that the claimant need make only "a claim, which, *on its face*, is governed" by the Contract.

Although, as noted below, the applicability of Articles VI(B) and XIV to the dispute over the nonrenewal of Dawson's extracurricular coaching contract is far from clear, we cannot say with "positive assurance" that the "arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Articles VI(B) and XIV provide in full:

"Article VI

"B. *Continuing contract teachers shall not be disciplined, reprimanded, reduced in rank or compensation, or deprived of any professional advantage, including non-renewal of contract, without just cause.*" (Emphasis added)

"Article XIV

Promotions

"Position as used in this article means any position which pays a salary differential and/or involves an additional or higher level of responsibility.

"A notice of all vacancies and promotional positions, including qualifications for same shall be made available to each bargaining unit member.

"The Committee agrees to give preference to qualified bargaining unit members when all other factors are substantially equal. The right is reserved, however, to open the position to outside candidates if it will be in the best interest of the system."

It is undisputed that Dawson is a "continuing contract teacher." Furthermore, reading the above-quoted language alone could reasonably lead to a conclusion that the term "non-renewal of contract" includes extracurricular contracts, the term "salary differential" refers *inter alia* to the extra pay that goes with football coaching, and the extracurricular coaching job is a "position" or "vacancy" for which Dawson as a "qualified bargaining unit member" has certain contract rights. Finally, and most importantly, the parties had in collective bargaining fixed the extra pay to be received by bargaining unit members who accepted extracurricular assignments. The extracurricular pay scale was set forth in Appendix B to the Contract. The fact that the parties bargained over the amount of extra pay that went with extracurricular positions at least suggests that the parties may have intended the provisions governing the nonrenewal of contracts and the filling of vacancies to apply to extracurricular as well as regular teaching positions, at least so far as continuing contract teachers were involved. Consequently, Dawson met the test articulated in *Lewiston Firefighters Ass'n v. City of Lewiston, supra,* 354 A.2d at 165. He made a claim "which, *on its face,* is governed by the collective bargaining contract." The dispute was subject to arbitration.

III. *The Arbitrator's Interpretation of the Collective Bargaining Agreement*

The sole remaining question is whether the arbitrator's resolution of the dispute on the merits was based on an arguably correct interpretation of the provisions of the Contract. The Committee does not challenge the arbitrator's finding of fact that there was no just cause for it to deny renewal of Dawson's extracurricular con-

tract. Instead, the Committee argues that the arbitrator erred in construing Article VI(B)'s "just cause" requirement to apply to extracurricular, as well as continuing teacher, contracts.

The Committee's position is by no means unpersuasive. In keeping with prior practice in the Westbrook schools, Dawson signed two different contracts covering the 1977–78 school year. The first was a two-year "Teacher's Continuing Contract," signed in 1976, which applied to his regular positions as guidance counselor and athletic director. Second was a one-year contract covering his extracurricular coaching assignment. The fact that the parties employed a separate contract for the extracurricular assignment and that the coaching assignment was for only one year instead of two might suggest that the parties intended to allow considerable flexibility in the hiring and firing of athletic coaches, an inference that matches, in the view of the Superior Court justice, the custom of the community.

In short, if the task of interpreting the Contract had fallen upon this court, we might have decided, as did the Superior Court, that the "just cause" provision applied to continuing contract teachers serving as teachers, not as athletic coaches. However, as we noted in our general discussion of the relation of the courts to arbitration, it is not for the Superior Court (or the Law Court) to substitute its judgment for that of the arbitrator. The court may reverse an arbitrator's award only "if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator[s] was not possible under a fair interpretation of the contract."

In the case at bar we cannot say that any such basis exists for reversing the arbitrator's decision in Dawson's favor. It is undisputed that Dawson is a "continuing contract teacher." Although it is unclear whether the term "contract" in Article VI(B) refers to extracurricular contracts as well as continuing teacher contracts, the arbitrator was entitled to draw upon his knowledge of the field and of the bargain-

ing relationship between the parties to resolve the ambiguity in favor of the Association. Similarly, while coaching a football team is not directly related to the teaching profession as commonly defined, ability to coach proven by actual experience is an additional credential that would increase Dawson's employability as a high school teacher. Conversely, the nonrenewal of his coaching contract might well be a negative factor in his employment file. Consequently, coaching can be viewed as a "professional advantage" in that it might aid Dawson in getting and retaining subsequent employment in his teaching profession.

We must conclude that the arbitrator's resolution of this dispute by applying Article VI(B) of the Contract to extracurricular as well as regular teaching contracts survives the court's limited review.

In summary, the Superior Court lacked justification for concluding that the dispute over the nonrenewal of Dawson's teaching contract was nonarbitrable. Furthermore, once it was apparent that the arbitrator's decision on the merits was based on an arguably correct interpretation of Article VI(B) of the Contract, the Superior Court's power to review that decision ceased. Accordingly, we reverse the Superior Court's vacation of the arbitrator's award, which had ordered that Dawson be reinstated to his former position as football coach and full-time guidance counselor at Westbrook High School.

The entry must be:

Appeal sustained.

Judgment of Superior Court set aside.

Remanded to Superior Court for entry of judgment confirming the arbitrator's award.

Costs on appeal allowed to appellant.