STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, SS.                           LOCATION: Augusta
                                        Docket No. CV-15-27


                                    )
STATE OF MAINE & DEPARTMENT OF      )
HEALTH AND HUMAN SERVICES,          )
                                    )   **ORDER ON PETITIONERS' MOTION**
                 Petitioners,       )   **TO VACATE ARBITRATION AWARD**
                                    )
        v.                          )
                                    )
MAINE STATE EMPLOYEES               )
ASSOCIATION, SEIU LOCAL 1989,       )
                                    )
                 Respondent.        )
                                    )

Petitioners State of Maine and Department of Health and Human Services

("DHHS") move to vacate an order from Arbitrator Joan Martin ordering the State to

reinstate the grievant, Ms. Berube, with full back pay, and ordering that Ms. Berube be

issued a written reprimand. The arbitration stems from a collective bargaining agreement

covering all Professional and Technical Services Bargaining Unit employees that the

Respondent Maine State Employees Association, SEIU Local 1989 ("MSEA") entered

into with the State for the period of July 1, 2009 to June 20, 2011 (the "CBA"). The

Petitioners contend that Arbitrator Martin exceeded her authority by: 1) finding the

grievance arbitrable even though the MSEA failed to meet time limits within the CBA; 2)

finding that a "Last Chance Agreement" signed by MSEA and the State in 2002 expired

even though it lacked an expiration date; and 3) ordering Ms. Berube be reinstated in

contravention of public policy against requiring DHHS to re-employ individuals who

have perjured themselves and consumed alcohol while working in violation of clear

directives to the contrary.

As discussed in greater detail below, the Court denies Petitioners' Motion to Vacate because Arbitrator Martin did not exceed her authority in finding the grievance arbitrable, and did not abuse her discretion or violate public policy by ordering Ms. Berube reinstated with the DHHS.

## I. Background

Grievant Susan Berube was terminated in June of 2013 from her caseworker position at the DHHS for allegedly having alcohol on her breath while meeting with representatives of a nonprofit agency. The nonprofit agency, Sunrise Opportunities, represents some of Ms. Berube's clients. On March 26, 2013, two Sunrise employees reported to a supervisor that they smelled alcohol on Ms. Berube's breath when she came into their office. That supervisor notified Ms. Berube's supervisor at DHHS and requested that Ms. Berube be removed from the caseload of Sunrise's clients immediately. DHHS investigated the incident, found it to be credible, and terminated Ms. Berube on June 5, 2013.

Approximately eleven years earlier, in 2002, Ms. Berube was terminated from DHHS for drinking alcohol on the job. By agreement of the State, MSEA, and Ms. Berube, however, the termination was converted to a one-week suspension through the entry of a Last Chance Agreement. (Attachment D to Pet.s' Mot. to Vacate, Last Chance Agreement.) Pursuant to the CBA, a disciplinary suspension remains in an employee's personnel file for five years, longer if there is a subsequent discipline. However, there is no similar language in the CBA limiting the duration of a Last Chance Agreement. (Attachment A to Pet.s' Mot. to Vacate Arbitration Award, CBA at 47-48; Attachment B to Pet.s' Mot. to Vacate, Arbitrator Martin's January 14, 2015 Decision (the "Arb.

2

Decision"), 9.) Indeed, the Last Chance Agreement contains no express expiration date. (Last Chance Agreement.)

In June 2005, Ms. Berube received a letter from the DHHS Regional Director, Susan Sprague, reminding her that she was still under the Last Chance Agreement, and that reporting to work "with the odor of alcohol, even the stale odor of alcohol will not be acceptable." (Arb. Decision, 9.) In April of 2006, Ms. Berube's supervisor gave her a memo stating that someone reported the odor of alcohol in the room at a staff meeting and reminded Ms. Berube that if the smell of alcohol is detected on her breath while at work she risks the possibility of being terminated pursuant to the Last Chance Agreement. (*Id.*) Ms. Berube signed the memo and added the comment: "I am well aware of my Last Chance Agreement and am adamant that this has nothing to do with me." (*Id.*)

Following Ms. Berube's termination on June 5, 2013, MSEA filed a grievance on her behalf that progressed through Steps 1 and 2 of the contractual grievance procedure. On July 12, 2013, the grievance was moved to Step 3, and on August 26th a Step 3 meeting was held. On August 29th, the Step 3 decision arrived at MSEA's offices. MSEA's receptionist signed the certified mail receipt acknowledging delivery. (Attachment C to Pet.s' Mot. to Vacate, Arbitrator Martin's June 23, 2013 Interim Arbitration Decision (the "Interim Arb. Decision"), 2.) MSEA has two "Member Support Specialists" who are responsible for moving grievances through the steps of the grievance process and keeping MSEA's Field Representatives aware of upcoming filing deadlines. (*Id.*) When Ms. Berube's Step 3 decision was received and signed-for by

3

MSEA's receptionist on August 29, both Member Support Specialists were on leave.

(*Id.*)

On August 30, 2013, MSEA's Rod Hilitz asked the State's Chief Negotiator,

Breena Whitcomb, for a waiver on upcoming deadlines as follows:

> Due to deaths in the family and sick leaves, both of our Member Support
> Specialists are out of work for at least the next two weeks. I am doing the
> best I can to stay on top of timelines, but as you know this is work they
> would typically administer. These absences began earlier this week with
> both of them being out on the morning of Tuesday 8/27. I do not normally
> do this work and there is a potential for me to make a mistake. I am doing
> the best I can and really don't anticipate any mistakes, but I would
> appreciate if you could give us a break on the enforcement of timelines in
> the interim during the time when they are both out. I believe one will be
> returning by Sept. 12. I know we've done this in the past, so if that is
> acceptable please let me know.

(*Id.* at 2-3.) Ms. Whitcomb replied, in pertinent part:

> Of course we will work with you/MSEA while the Member Support
> Specialists are out. I will notify everyone in this office and the
> Department HR Directors that we are waiving time requirements form
> [sic] 8/27 through 9/13.
>
> Let's plan to pick up the timelines on Monday 9/16. We can touch base
> later if this needs to change.

(*Id.* at 3.) No further extension or waiver of time limits was requested or granted. (*Id.*)

On October 22, 2013, which was twenty-six workdays after September 16, MSEA

filed the demand for arbitration with the Office of Employee Relations. (*Id.* at 3.) Ms.

Martin was appointed as arbitrator and, because Petitioners raised the timeliness issue

prior to arbitration, the parties submitted exhibits and briefs on the question of

arbitrability. Arbitrator Martin issued the Interim Arbitration Decision finding that the

grievance was arbitrable. (*See generally* Interim Arb. Decision.)

4

After receiving the Interim Arbitration Decision, the parties proceeded to a hearing on the merits. On January 14, 2015, Arbitrator Martin issued the Arbitration Decision. Arbitrator Martin credited the State's witnesses who testified that the smell of alcohol on Ms. Berube's breath was overpowering and concluded that Ms. Berube did have alcohol on her breath. (Arb. Decision, 15-16.) Arbitrator Martin, however, ordered the State to reinstate Ms. Berube with full back pay, and ordered that Ms. Berube be instead issued a written reprimand. (*Id.*)

## II.    Discussion

An arbitrator's award must be vacated if the arbitrator exceeds her authority. 14 MR.S.A. § 5938(1)(C). An arbitrator may not travel outside the agreement in reaching a conclusion, because to do so would be to base her conclusion on the arbitrator's own individual concept of justice instead of interpreting and applying the collective bargaining agreement. *Caribou Bd. of Ed. v. Caribou Teachers Assn.*, 404 A.2d 212, 214 (Me. 1979). An arbitrator's function is confined to interpretation and application of the collective bargaining agreement, the arbitrator "does not sit to dispense [her] own brand of justice." *Id.* (citations omitted). In determining whether an arbitrator exceeded her authority, the party moving to vacate an arbitration award bears the burden of proof. *Am. Fed'n of State, Cnty. & Mun. Emps., Council 93 v. City of Portland*, 675 A.2d 100, 102 (Me. 1996).

"The standard of review to be employed by a court in determining whether an arbitrator has 'travelled outside the agreement' has been variously expressed." *Westbrook School Comm. v. Westbrook Teachers Ass'n*, 404 A.2d 204, 209 (Me. 1979). "The interests in finality and in assuring an informed disposition of the dispute dictate

that judicial review be narrow indeed." *Id.* As a result, an arbitrator's award will only be vacated if it "manifests disregard for the terms of the contract" or the arbitrator's reasoning is "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling." *Id.* (citations and internal quotations omitted). Stated differently an arbitrator's award exceeds her powers when the court finds "no rational construction of the contract" can support the award. *Id.* In other words, "if all fair and reasonable minds would agree that the construction of the contract made by the [arbitrator] was not possible under a fair interpretation of the contract, then the court will be bound to vacate or refuse to confirm the award." *Id.* (citation omitted). In making this determination, the underlying agreement "must be broadly construed, and all doubts will usually be resolved in favor of [the arbitrator's] authority." *Caribou Bd. of Ed.*, 404 A.2d at 215. Accordingly, even if the court determines an arbitrator's interpretation of the underlying agreement is erroneous, it will be upheld if it "was rationally grounded in the agreement." *Maine State Emps. Ass'n v. State Dep't of Defense*, 436 A.2d 394, 397 (Me. 1981) (citation omitted).

### A. Whether Arbitrator Martin Exceeded her Authority by Finding the Grievance Arbitrable

Petitioners argue that Arbitrator Martin exceeded her authority by finding the grievance arbitrable even though the MSEA failed to meet clear cut time limits imposed by the CBA. In particular, Petitioners argue that the CBA contains "rigid time limits that eliminate the possibility of arbitration" if said limits are not met. In light of these requirements, Petitioners contend that no rational construction of the CBA and grievance articles therein could justify the arbitrator's determination that Ms. Whitcomb's written

6

agreement to waive the time limits until September 16th constituted a waiver of the time limits beyond that date.

Petitioners further argue that three other arbitrators interpreting the same language have given effect to the "clear language which prevents a grievance from going forward when the demand for arbitration is late filed," but Arbitrator Martin distinguished all these cases on an illogical and irrational ground. In particular, she stated that the earlier cases did not have a written agreement to waive the time limits as they did in Ms. Berube's case. This focus, Petitioners contend, misses the point, which is that only a written waiver of time limits in this case can transform the untimely request for arbitration into a timely request.

MSEA contends that Arbitrator Martin's finding regarding the arbitrability of the grievance is grounded in the CBA. In particular, MSEA contends that Arbitrator Martin found the Petitioners granted a "gracious and open ended" waiver of the CBA's time limits. She found that the parties agreed to a flexible waiver and that Petitioners were willing to adjust the waiver period based on circumstances and need. In addition, MSEA points out that it only learned that the Petitioners had issued a Step 3 decision when the Petitioners objected to arbitrating the dispute. MSEA contends this was precisely the type of issue the waiver was designed to address.

Petitioners reply that while Arbitrator Martin's decision is entitled to deference, there was no ambiguity in the Grievance Procedure article or the written extension that would make Arbitrator Martin's interpretation rational. Just because Ms. Whitcomb's email had a congenial tone, that pleasantry cannot override the unambiguous language setting a definite limit to the extension.

7

The CBA contains a "Grievance Procedure" article, which provides for arbitration as the final step of the grievance process. (CBA, 33-36.) Section 2.4(a) therein governs the procedure for submitting a grievance to arbitration. (CBA, 34.) That section provides, in pertinent part, that "[t]he request for arbitration shall be received by the Office of Employee Relations through personal service or by mailing by registered or certified mail within fifteen (15) workdays of the receipt of the Step 3 decision." (*Id.*) Section 3.3 of the Grievance Procedure article provides, in relevant part that "[i]n no event can a grievance be taken to the next or any succeeding steps of this procedure unless the employee and/or his/her representative meets the time limits or extensions thereof." (*Id.* at 35-36.) Importantly, Section 3.2 provides that "[a]ll of the time limits contained in this Article may be extended by mutual agreement of the parties and such extensions shall, in order to be effective, be confirmed in writing." (*Id.* at 35 (emphasis added).) Finally, section 2.4(c) provides that "[t]he decision of the arbitrator shall be final and binding consistent with applicable law and this Agreement. The arbitrator shall have no authority to add to, subtract from or modify any provisions of this Agreement." (*Id.* at 35.)

As set forth above, MSEA wrote to Ms. Whitcomb explaining that it did not anticipate any mistakes, "but I would appreciate if you could give us a break on the enforcement of timelines in the interim during the time when they are both out. I believe one will be returning by Sept. 12." (Interim Arb. Decision, 2-3.)

Ms. Whitcomb responded:

> Of course we will work with you/MSEA while the Member Support Specialists are out. I will notify everyone in this office and the Department HR Directors that we are waiving time requirements form [sic] 8/27 through 9/13.

8

> Let's plan to pick up the timelines on Monday 9/16. We can touch base later if this needs to change.

(*Id.* at 3.)

Interpreting this language, Arbitrator Martin determined that Ms. Whitcomb's response "exemplified the working relationship between the parties and the State's willingness to accommodate the Union's administrative difficulties." (*Id.* at 6.) As a result, Ms. Whitcomb's response "not only agreed to a time requirement waiver, but expressed an intent to continue it, if circumstances required." (*Id.*) Arbitrator Martin determined that there was a "plan" that was open to "later...change." (*Id.*) Although the MSEA did not request a subsequent extension, this was because one of the MSEA employees returned on September 11. (*Id.* at 7.) However, no one except the temporary employee who left MSEA on September 20 knew that the clock was already ticking on the demand for Ms. Berube's arbitration. (*Id.*) Indeed, Arbitrator Martin found that the temporary employee had no understanding of what the date stamp on the Step 3 Decision meant. (*Id.*)

Arbitrator Martin also found that the absence of a Step 3 decision was not an extraordinary circumstance that should have set off warning bells because the Step 3 decision could take "some time" to issue and the MSEA could file a demand for arbitration without ever receiving a written decision from the State. (*Id.*) Accordingly, Arbitrator Martin found that when the two MSEA employees returned to work, they had no reason to look for a Step 3 decision. (*Id.*) If they had, Arbitrator Martin determined a timely arbitration demand would have been sent. (*Id.*)

9

Arbitrator Martin also discussed three arbitration decisions submitted previously by the Petitioners. Neither of the parties, however, included those decisions in the record or provided the Court with sufficient identifying information to locate said decisions.[1] Accordingly, the Court has no way to analyze Arbitrator Martin's assessment of those cases.

Ultimately, Arbitrator Martin found the grievance arbitrable explaining that: 1) the parties agreed to waive the timelines and the Petitioners expressed a clear intent to extend the waiver if necessary; 2) MSEA's fear that a mistake could occur was exactly what happened during the waiver period, but it was not discovered on time; 3) the MSEA employees who would have understood what receipt of a Step 3 decision meant did not return to work until two weeks after the decision arrived; and 4) in light of the above, it would be "unacceptable" to deny a terminated employee the right to go to arbitration. (*Id.* at 8-9.) Furthermore, Arbitrator Marin explained that because not all collective bargaining agreements include the possibility of waiving deadlines, the fact that the current CBA includes such a possibility demonstrates an "intent to allow accommodation for fact specific circumstances and the desire to treat each other reasonably. No one on either side of the table could have anticipated the conglomeration of circumstances that led to the missed timeline in this case," and thus the grievance is arbitrable. (*Id.* at 9.)

Here, the Court finds that Arbitrator Martin did not exceed her authority by finding the grievance arbitrable based on her determination that the State granted MSEA a flexible, open-ended waiver with a clear intent to extend the waiver to cover the present circumstances. The Court reaches this decision in light of the considerable deference it

---

[1] The three arbitration decisions are identified as "Twomey, David 197; Stutz, Michael, 1989; [and] Katz, Lawrence, 1995." (Interim Arb. Decision, 5.)

10

must afford to the decisions of an arbitrator. Specifically, that the Court can only vacate an arbitrator's award if it is "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling." *Westbrook School Comm.*, 404 A.2d at 209. Furthermore, the underlying agreement "must be construed broadly, and all doubt will usually be resolved in favor of [the arbitrator's] authority." *Caribou Bd. of Ed.*, 404 A.2d at 215. While the Court may have ruled differently were it presented with the matter in the first instance, it cannot say that no judge could ever conceivably have made the same ruling as Arbitrator Martin. This is because when the State agreed in writing to waive the deadlines, it knew the impetus behind the request was the absence of certain key employees at MSEA. (Interim Arb. Decision, 3 ("Of course we will work with you/MSEA while the Member Support Specialists are out.").) In light of this knowledge, Arbitrator Martin interpreted the remainder of the State's communication as evincing a flexible waiver, with a clear intent to extend said waiver to cover difficulties arising from the absence of the key employees. (*Id.* ("I will notify everyone in this office and the Department HR Directors that we are waiving time requirements form [sic] 8/27 through 9/13. Let's plan to pick up the timelines on Monday 9/16. We can touch base later if this needs to change.").) This interpretation is supported by Arbitrator Martin's explanation that not all collective bargaining agreements have language analogous to Section 3.2 in the present CBA permitting the waiver of deadlines. (*Id.* at 9.) As a result, Arbitrator Martin reasonably interpreted the CBA's inclusion of an option to waive deadlines as demonstrating an intent to treat the other party reasonably and to allow accommodation for issues interfering with a parties' ability to meet the deadlines. (*Id.*) Taking this all together, the Court cannot say that Arbitrator Martin exceeded her authority by finding

11

the grievance arbitrable because fair and reasonable minds could agree with her construction of the CBA and the State's written waiver. *Westbrook School Comm.*, 404 A.2d at 209.

### B. Whether Arbitrator Martin Rationally Construed the "Last Chance Agreement" as Containing an Implicit Expiration Date

Petitioners argue that the Last Chance Agreement signed by MSEA and the State in 2002 constitutes an addendum to the CBA. Petitioners contend that the agreement effectively amends the CBA by limiting grievance rights if Ms. Berube were terminated pursuant to the agreement. In light of the fact that the Last Chance Agreement did not have an explicit expiration date, Petitioners argue that the parties intended it to remain in effect indefinitely. If the parties had intended the Last Chance Agreement to have an expiration date, they would have included one.

MSEA argues that the Petitioners failed to carry their burden of demonstrating that Arbitrator Martin exceeded her authority by finding that the 2002 Last Chance Agreement expired. MSEA agrees that the Last Chance Agreement is "part and parcel" of the CBA and, as such, Arbitrator Martin's interpretation thereof is entitled to the same high level of deference as her interpretation of the CBA. MSEA further argues that Arbitrator Martin did not exceed her authority by finding that the Last Chance Agreement contained an implied expiration date that was to occur after a reasonable amount of time.

As discussed *supra* Section I, the Last Chance Agreement is dated November 25, 2002, but contains no express expiration date. Arbitrator Martin rejected the Petitioners' contention that the Last Chance Agreement does not expire, explaining that both case law and expert opinion indicate that a Last Chance Agreement expires after a reasonable amount of time. (Arb. Decision, 12 (citing and quoting Common Law of the Workplace,

12

Theodore St. Antoine, Editor, 1990, p. 175).) She then found that "eleven years exceeds the reasonableness limit." (*Id.* at 13.) Arbitrator Martin also explained that neither party offered evidence regarding their practice as to the typical duration of a Last Chance Agreement, and in light of this silence and the above-mentioned rule, Ms. Berube's discharge could not be justified based on the Last Chance Agreement. (*Id.* at 13.) Accordingly, Arbitrator Martin confirmed that the Last Chance Agreement was not in effect at the time of the present incident. (*Id.*)

Here, given the ambiguity created by the Last Chance Agreement's failure to include an express expiration date—or statement that it was not intended to expire—Arbitrator Martin's finding that the Last Chance Agreement expired after a reasonable time constitutes a rational construction of the agreement. Accordingly, the Court will not vacate the arbitration award based on the Last Change Agreement remaining in effect.

### C. Whether Arbitrator Martin's Decision to Reinstate Ms. Berube Should be Vacated as Against Public Policy.

Petitioners argue that Arbitrator Martin's reinstatement of Ms. Berube violated Maine public policy by requiring the Petitioners to reinstate and reemploy an individual who perjured herself during an official proceeding, i.e. the arbitration. Petitioners point out that 17-A M.R.S.A. § 451 provides that making false material statements under oath at an official proceeding is a class C criminal offense. Petitioners then emphasize that the public policy against perjury is especially important in this case given the position of trust and responsibility Ms. Berube has representing adults with mental disabilities.

In addition, Petitioners argue that reinstating Ms. Berube violates public policy by placing an employee who has consumed alcohol in violation of clear directives to the contrary, in charge of a vulnerable population unable to care for itself.

13

MSEA responds that Petitioners have failed to show—as required by Maine law—that reinstating Ms. Berube violates a public policy "affirmatively expressed or defined in the laws of Maine." Instead, MSEA argues that Petitioners have only made a vague appeal to a supposed public interest. This appeal, MSEA contends does not meet the standard for a well-defined and dominant public policy.

"[A]n arbitrator's award will be vacated if the arbitrator exceeds [her] powers by contravening public policy. An arbitrator's award violates public policy if it requires conduct beyond that to which [a] public employer may bind itself or allow itself to be bound. The public policy violated by the award, however, must be affirmatively expressed or defined in the laws of Maine." *Dep't of Corr. v. AFSCME, Council 93*, 2000 ME 51, ¶ 14, 747 A.2d 592 (citations and quotations omitted) (finding no violation of public policy where arbitrator reinstated Department of Correction's past overtime practice because the Department did not cite any statutory or case law violated by the award). Furthermore, it is "necessary to confine public policy to that which is well defined and dominant and ascertained by references to the laws and legal precedents and not from general considerations of supposed public interests." *Bureau of Maine State Police v. Pratt*, 568 A.2d 501, 505-506 (Me. 1989) (reversing Superior Court's finding that arbitrator's award reinstating sergeant in Maine State Police violated public policy because although practical justifications may exist for preserving strict military chain of command, such a requirement is neither expressed nor defined affirmatively in the laws of this State); *see also Dep't of Prof'l & Fin. Regulation v. Me. State Employees Ass'n*, 2013 ME 23, 64 A.3d 339 (finding no violation of public policy where arbitrator ordered reinstatement of employee to Department of Professional and Financial Regulations who

14

was married to a manager of a Bureau of Insurance regulated entity in alleged violation of 24-A M.R.S. § 209).

Here, although Arbitrator Martin found Ms. Berube's explanation for why someone might think she had the odor of alcohol on her "convoluted and unconvincing," this disbelief in Ms. Berube's testimony is not equivalent to finding that she was guilty of perjuring herself in violation of 17-A M.R.S. § 451. Indeed, while this finding and Ms. Berube's testimony would be relevant in determining whether Ms. Berube perjured herself, she has not been tried and found guilty of said offense. Furthermore, as in *Bureau of Maine State Police v. Pratt*, Petitioners do not point to any laws affirmatively providing that the State cannot employ an individual who has consumed alcohol in violation of clear directives. Accordingly, the Court will not vacate the arbitration award for violating public policy.

## III.    Conclusion

For the reasons discussed above, the Court **denies** Petitioners' Motion to Vacate because Arbitrator Martin did not exceed her authority in finding the grievance arbitrable, and did not abuse her discretion or violate public policy by reinstating Ms. Berube with DHHS.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: September 2, 2015

Michaela Murphy, Justice
Maine Superior Court

15

STATE OF MAINE - PLAINTIFF
6 STATE HOUSE STATION
AUGUSTA ME 04333
Attorney for: STATE OF MAINE
JULIE ARMSTRONG  - RETAINED
BUREAU OF EMPLOYEE RELATIONS
79 STATE HOUSE STATION
AUGUSTA ME 04333-0079


DHHS - PLAINTIFF


Attorney for: DHHS
JULIE ARMSTRONG  - RETAINED
BUREAU OF EMPLOYEE RELATIONS
79 STATE HOUSE STATION
AUGUSTA ME 04333-0079


vs
MAINE STATE EMPLOYEES ASSOC - DEFENDANT
65 STATE STREET, PO BOX 1072
AUGUSTA ME 04332
Attorney for: MAINE STATE EMPLOYEES ASSOC
ANNE F MACRI  - RETAINED 03/26/2015
MAINE STATE EMPLOYEES ASSN
65 STATE ST
PO BOX 1072
AUGUSTA ME 04332-1072

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CV-2015-00027


**DOCKET RECORD**


Filing Document: FILING MOTION                Minor Case Type: ARBITRATION AWARDS
Filing Date: 03/05/2015

## Docket Events:
03/05/2015 FILING DOCUMENT - FILING MOTION FILED ON 03/05/2015

03/05/2015 Party(s):  STATE OF MAINE
          MOTION - MOTION TO VACATE FILED WITH AFFIDAVIT ON 03/05/2015

04/01/2015 Party(s):  MAINE STATE EMPLOYEES ASSOC
          OTHER FILING - OPPOSING MEMORANDUM FILED ON 03/26/2015
          S/ANNE MACRI, ESQ.

04/03/2015 Party(s):  STATE OF MAINE
          OTHER FILING - REPLY MEMORANDUM FILED ON 04/02/2015
          Plaintiff's Attorney:  JULIE ARMSTRONG
          S/NICHOLAS LASKEY, ESQ.

04/03/2015 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 04/03/2015
          M MICHAELA MURPHY , JUSTICE

04/03/2015 Party(s):  STATE OF MAINE
          ATTORNEY - RETAINED ENTERED ON 03/05/2015
          Plaintiff's Attorney: JULIE ARMSTRONG

04/03/2015 Party(s):  DHHS

ATTORNEY - RETAINED ENTERED ON 03/05/2015
Plaintiff's Attorney: JULIE ARMSTRONG

04/14/2015 HEARING - OTHER MOTION SCHEDULED FOR 06/02/2015 at 02:00 p.m. in Room No. 4
M MICHAELA MURPHY , JUSTICE
MOTION TO VACATE ARBITRATION AWARD

04/14/2015 HEARING - OTHER MOTION NOTICE SENT ON 04/14/2015
MOTION TO VACATE ARBITRATION AWARD

06/02/2015 HEARING - OTHER MOTION HELD ON 06/02/2015
M MICHAELA MURPHY , JUSTICE
Defendant's Attorney: ANNE F MACRI
Plaintiff's Attorney: JULIE ARMSTRONG
MOTION TO VACATE ARBITRATION AWARD                                    COURTROOM 3
2:02:55 TO 2:24:24

06/02/2015 CASE STATUS - DECISION UNDER ADVISEMENT ON 06/02/2015
M MICHAELA MURPHY , JUSTICE
MOTION TO VACATE ARBITRATION AWARD

09/02/2015 Party(s): STATE OF MAINE
MOTION - MOTION TO VACATE DENIED ON 09/02/2015
M MICHAELA MURPHY , JUSTICE
COPIES TO PARTIES/COUNSEL

09/02/2015 Party(s): MAINE STATE EMPLOYEES ASSOC
ATTORNEY - RETAINED ENTERED ON 03/26/2015
Defendant's Attorney: ANNE F MACRI

09/02/2015 FINDING - JUDGMENT DETERMINATION ENTERED ON 09/02/2015
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT. COPIES TO
PARTIES/COUNSEL AND REPOSITORIES                          ORDER ON PETITIONER'S
MOTION TO VACATE ARBITRATION AWARD

ORDER - COURT JUDGMENT ENTERED ON 09/02/2015
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT. COPIES TO
PARTIES/COUNSEL                                           ORDER ON PETITIONER'S
MOTION TO VACATE ARBITRATION AWARD
Judgment entered for MAINE STATE EMPLOYEES ASSOC and against STATE OF MAINE, DHHS.

09/02/2015 FINDING - FINAL JUDGMENT CASE CLOSED ON 09/02/2015

A TRUE COPY
ATTEST: _____
                     Clerk