## MAINE STATE EMPLOYEES ASSOCIATION

v.

## STATE of Maine, et al.

Supreme Judicial Court of Maine.

Argued Sept. 5, 1986.
Decided Oct. 28, 1986.

Shawn C. Keenan (orally), Maine State Employees Assn, Augusta, for plaintiff.

Julie M. McKinley (orally), Governor's Office of Employee Relations, Dept. of Personnel, Augusta, for defendant.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

The plaintiff, Maine State Employees Association (Association), appeals from judgments entered on two orders of the Superior Court (Kennebec County) affecting the labor relations of State employee Louise

Hinkley and defendants, State of Maine and Department of Educational and Cultural Services (collectively referred to herein as "State"). The Association appeals from 1) an order granting the State's motion for summary judgment in an action brought pursuant to section 979–H(5) of the State Employees Labor Relations Act, 26 M.R.S.A. §§ 979–979–P (1974 & Pamph.1985) and 2) an order confirming an arbitration award and denying the Association's motion to vacate that award pursuant to section 5938 of the Uniform Arbitration Act, 14 M.R.S.A. §§ 5927–5949 (1980 & Supp. 1985).[1] We affirm the judgments of the Superior Court.

### Background

For the period May 1, 1982 through June 30, 1983, the State and the Association were parties to a collective bargaining agreement (Agreement). The Agreement set forth wages, hours, and the terms and conditions of employment for certain State employees, including Association member Louise Hinkley.

In 1980, Hinkley entered into employment with the State as a "Librarian II" in the State Library. In May, 1983, she filed with her supervisor a request to be reclassified to the higher paid "Librarian III" position. Her supervisor failed to forward her request to the Department of Personnel. In October, 1983, Hinkley submitted her request directly to the Department of Personnel. The Department did not process Hinkley's request until March, 1984.

In the meantime, in August, 1983, the State had implemented Paragraph B, Section 1 of Personnel Bulletin 4.3 (Paragraph B), which changed procedures for requests for reclassification such as that of Hinkley. Before the implementation of Paragraph B, State employees continued to perform their job duties even if those duties exceeded their official job classifications. The new procedures called for supervisors to review immediately the jobs performed by employees seeking reclassification and required such employees to cease performing any duties not within their official job classifications.[2] In late February and early March, 1984, Hinkley's job duties were reassigned to an employee who had been promoted to Librarian III in 1982, and Hinkley was reclassified as a "Community Services Librarian," effective May 17, 1983, the date of her original request.[3] Thus, Hinkley's reclassification request was not processed until about five or six months after she submitted it directly to the Department of Personnel.

### The Association's Action under 26 M.R.S.A. § 979–H(5)

The Association filed a Prohibited Practice Complaint with the Maine Labor Relations Board (Board) on February 3, 1984. In its complaint, the Association contended that the State's unilateral implementation of Paragraph B violated its duty to bargain with the Association. The Association requested, *inter alia*, that the Board order the State to rescind Paragraph B and to restore any employees affected by it to the *status quo ante*. The Board issued its decision in July, 1984 holding that the State violated its duty to bargain by unilaterally implementing Paragraph B. The Board did not discuss Hinkley's situation, nor did it order the restoration of the *status quo ante* for employees, such as Hinkley, whose requests for reclassification might

---

**1.** Acting for this Court, the Chief Justice ordered the consolidation of these appeals.

**2.** Paragraph B of Section 1 of Bulletin 4.3 provided:

Upon receiving a request from an employee, the supervisor shall immediately act to assure that the employee's work is within the assigned job classification or modify the work so that it is within the assigned job classifica-

tion, reducing or eliminating the time the employee is working out of classification.

**3.** The changes in Hinkley's job duties consisted of the termination of institutional consulting (estimated to have been 8% of her work time) and a change in supervision. There is no indication in the record that she suffered any wage loss as a result of being reclassified from Librarian II to "Community Services Librarian."

have been prejudiced by the State's unilateral implementation of Paragraph B.

■ The Association subsequently brought an action in the Superior Court pursuant to 26 M.R.S.A. § 979–H(5) (Pamph.1985).[4] The Association mischaracterizes its complaint as one brought also pursuant to Rule 80B of the Maine Rules of Civil Procedure. Direct judicial review of the Board's decision, pursuant to Rule 80B, is only available if the party seeking such review files a complaint within 15 days of the effective date of the Board's decision. 26 M.R.S.A. § 979–H(7) (Pamph. 1985). The Association's complaint was filed almost one year after the Board's decision took effect and sought only to enforce compliance with the Board's decision pursuant to section 979–H(5). The parties are bound by the Board's decision, and the Superior Court was required only to interpret the scope of relief granted by the Board's order to determine whether the State complied with that order.

In its complaint, the Association asked the Superior Court to order the State "to comply with the Decision and Order of the Board ... by restoring forthwith to Louise Hinkley the job duties she was performing prior to the application of bulletin 4.3."

In granting the State's summary judgment motion, the Superior Court held:

> By this action, the Maine State Employees Association seeks to have the Court interpret the order of the Maine Labor Relations Board to include the relief which the Maine State Employees Association sought but failed to achieve before the Maine Labor Relations Board. This the Court declines to do. Accordingly, the State's Motion for Summary Judgment will be granted.

4. Section 979–H(5) provides in pertinent part:
5. If after the issuance of an order by the board requiring any party to cease and desist or to take any other affirmative action, said party fails to comply with the order of the board, then the party in whose favor the order operates or the board may file a civil action in

■ On appeal from that ruling, the Association argues that the Superior Court erred in its interpretation of the Board's Decision and Order. We disagree. In our review of this summary judgment, the Association obtains the benefit of all favorable inferences that we might draw from the evidence before the Superior Court. *See Lidstone v. Green,* 469 A.2d 843, 845 (Me.1983). Applying this rule, we conclude that the Superior Court correctly decided that there was no genuine issue as to any material fact, and that the State was entitled to judgment as a matter of law.

The Board's order could have included a "reparation order" that would have restored all employees affected by Paragraph B to the *status quo ante. See Caribou School Department v. Caribou Teachers Association,* 402 A.2d 1279, 1284 (Me. 1979). In the case at bar, however, the Board stopped short of granting such comprehensive relief to the Association. The Board's order read as follows:

> That the State of Maine and its representatives and agents
>
> 1. Cease and desist from:
>    a) applying Paragraph B in Section 1 of Bulletin 4.3 without first notifying and bargaining with the Maine State Employees Association about application of the Paragraph if such bargaining is requested.
>    b) in any like manner interfering with, restraining, or coercing employees in the exercise of rights guaranteed by Section 979–B of the [State Employees Labor Relations] Act.
>    2. Take the affirmative action of immediately revoking Paragraph B in Section 1 of Bulletin 4.3 until such time as the change in practice proposed in that Paragraph is negotiated with the Maine State Employees Association.

the Superior Court in Kennebec County, to compel compliance with the order of the board. In such action to compel compliance, the Superior Court shall not review the action of the board other than to determine questions of law....

Although, in its decision, the Board discussed the importance of fashioning a remedial order to restore "the situation as nearly as possible to that which would have obtained but for the prohibited practice," nothing on the face of the Board's order manifests an intention to restore Hinkley or any other employee to the *status quo ante*. Indeed, the Board did not address Hinkley's particular circumstance in its decision and order.[5] Furthermore, the factual issue of whether changes in Hinkley's job duties were the result of the State's unilateral implementation of Paragraph B or were merely corrections in overlapping job duties was never resolved.[6] Under section 979–H(5), the Superior Court was constrained to review only the scope of the Board's order. The Superior Court did not err in concluding that the restoration of Hinkley's job duties was simply not included in the Board's order.

### The Association's Arbitration Action

In November, 1983, the Association sought remedial relief for Hinkley through grievance arbitration procedures provided in the Agreement. The Association argued that the State violated certain articles in the Agreement by not processing Hinkley's reclassification request within the 45 day time limit required by section 593 of the Personnel Law, 5 M.R.S.A. §§ 551–593

(1979 & Supp.1985).[7] The arbitrator concluded that section 593 was "external to the Agreement" and returned an arbitration award in favor of the State. The Association then filed a motion in Superior Court to vacate the arbitrator's decision, contending that he exceeded his powers by rendering an award inconsistent with section 593.[8] The Superior Court denied the Association's motion and confirmed the arbitration award.[9]

On appeal, the Association argues that the Superior Court erred in upholding the arbitrator's determination that section 593 was external to the Agreement. The Association contends that the arbitrator was compelled to conclude that the State breached certain articles of the Agreement by failing to meet the requirement of section 593 in processing Hinkley's reclassification request. As a result, the Association asks this Court to conclude that the arbitrator exceeded his powers. We are unable to reach such a conclusion in this case.

■■■ The arbitrator's interpretation of the agreement is entitled to a high degree of judicial deference. *E.g., Cape Elizabeth School Board v. Cape Elizabeth Teachers Association*, 459 A.2d 166, 174 (Me.1983). To vacate the arbitration award on the grounds that the arbitrator exceeded his powers, we must find that "no rational

---

5. The Association could have asked the Board to clarify or modify the scope of its order to determine whether, in fact, the State was required to restore Hinkley to her old job duties. Having failed to do that, the Association cannot ask the Superior Court and now this Court to read into the Board's order a remedy that it simply did not provide.

6. This issue was set for trial when the Superior Court granted the State's motion for summary judgment.

7. The Association relies on the paragraph in section 593 that provides as follows:

> .   .   .   .   .
>
> Any request for classification of positions, the allocation of new positions or the reallocation of existing positions in the classified service or the unclassified service, shall be processed by the Commissioner of Personnel

and the commissioner's determination made within 45 days from the date of filing the request with the Department of Personnel.
.   .   .

5 M.R.S.A. § 593 (Supp.1985).

8. The Association's motion was brought pursuant to 14 M.R.S.A. § 5938(1)(c) (1980), which provides as follows:

> 1. Vacating award. Upon application of a party, the court shall vacate an award where:
> C. The arbitrators exceeded their powers.... But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

9. Title 14 M.R.S.A. § 5938(4) (1980) provides:
> 4. Confirmation of award. If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award.

construction of the contract that can support the award." *Westbrook School v. Westbrook Teachers Association.,* 404 A.2d 204, 209 (Me.1979). So long as the arbitrator draws his decision from the terms of the collective bargaining agreement, we·are reluctant to disturb his conclusions. *See Board of Directors of Maine School Administrative District No. 75 v. Merrymeeting Educators' Association,* 354 A.2d 169, 170–71 (Me.1976).[10]

■■■ In the case at bar, the arbitrator reviewed the articles of the Agreement relied upon by the Association and concluded that they did not incorporate the requirements of Section 593. One of two articles in the Agreement of relevance to this appeal read as follows:

ARTICLE LVIII. MAINTENANCE OF BENEFITS

With respect to negotiable wages, hours and working conditions not covered by this Agreement, the State agrees to make no changes without appropriate prior consultation and negotiations with the Association unless such change is made to comply with the law, and existing regulations, Personnel Rules, written Policies and Procedures, General Orders, General Operating Procedure, or Standard Operating Procedure.

The arbitrator found that this article did not impose the requirements of section 593 upon the parties, but merely permitted the State to make certain unilateral changes in order to comply with law or the Personnel Rules. We find this to be a reasonable interpretation of that article. The other article read, in part, as follows:

ARTICLE XXX. RECLASSIFICATIONS

4. Except for reclassifications and reallocations in ·connection with a reorganization, any reclassification or reallocation decision of the Personnel Commissioner or the Arbitrator or Alternate shall be effective as of the date of the written initiation of the reclassification or reallocation request by the employee, MSEA or State and shall be implemented retroactively when the funds are provided pursuant to budgetary procedures. The State shall pay the employee reclassified or reallocated interest of one percent (1%) per month on all monies due as a result of the reclassification or reallocation from the date of the final decision until payment.

The arbitrator found that in negotiating this article, the Association proposed reclassification procedures that did not include the requirements of section 593. He concluded that the article reflected the parties' negotiations relating to the hardships caused by delays in the processing of reclassification requests, but that the Association stopped short of contractually requiring the Department of Personnel to act within a specified time.[11]

We are not in a position to second-guess the Arbitrator's determination that the parties did not incorporate the requirements of section 593 into the contract. The arbitrator's construction of the Agreement was bargained-for by the parties. As we have previously stated, an arbitrator "is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment...." *Lewiston Firefighters Association v. City of Lewiston,* 354 A.2d 154,

---

10. Indeed, we have stated that an arbitrator, in some circumstances, may not even have exceeded his powers where he has misinterpreted applicable law. *See Board of Directors of Maine School Administrative District No. 33 v. Teacher's Association of Maine School Administrative District No. 33,* 395 A.2d 461, 463 (Me.1978). We said, "For the arbitrator to make an error of law is not to 'exceed his powers' so that vacation of the award is authorized...." *Id.* at 463 (emphasis omitted).

11. On appeal, the Association relies on a third Article of the Agreement, the "Management Rights Article." Since the application of that Article was not included in the parties' stipulated issue before the arbitrator and, therefore, was not construed by him in his decision, we will not address that provision. *See, generally, Westbrook School Committee v. Westbrook Teachers Association,* 404 A.2d at 208–09.

165 (Me.1976) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409.) We recognize the policy behind the 45 day time limit of section 593. *See State v. Maine State Employees Association*, 443 A.2d 948, 951 (Me.1982). We cannot conclude, however, that "all fair and reasonable minds would agree" that the arbitrator's construction of the Agreement was not possible under a fair interpretation of the contract. *Cf. Westbrook School Committee v. Westbrook Teachers Association*, 404 A.2d at 209. Since the arbitrator stayed within the four corners of the parties' Agreement in reaching his conclusion, we give deference to his arbitration award. *See id.* at 208–09. We conclude that the Superior Court did not err in confirming that award.[12]

The entry is:

Judgments affirmed.

All concurring.

12. The Association relies upon two cases in which this Court found that arbitrators "travelled outside the agreement" of the parties in reaching their decisions: *Washburn v. State*, 432 A.2d 1237 (Me.1981) and *City of Bangor v. Local 926, Council 74, AFSCME*, 430 A.2d 41 (Me. 1981). Each of these cases is distinguishable from the case at bar. In the *AFSCME* case, we held that an arbitration board exceeded its powers in interpreting our advisory opinion, *Opinion of the Justices*, 401 A.2d 135 (Me.1979), to allow for union security provisions in public employee collective bargaining agreements; an interpretation that would have involved a duty to bargain under the terms of the parties' employment contract. Finding that the board misinterpreted our advisory opinion, we refused to defer to the arbitrators' construction of that contract. The case at bar is different. The arbitrator neither interpreted an advisory opin-

ion in order to construe the parties' agreement nor did he attempt a legal construction of section 593. He simply found that it was not incorporated into the Agreement. In *Washburn*, we found that an arbitrator exceeded his powers by reinstating a discharged employee on the basis of "an invalid provision [in the parties' agreement] relating to discharge procedures" applicable to the employee's position as Director of the Bureau of Veterans Services. *See Washburn v. State*, 432 A.2d at 1237. We held that the contract provision conflicted with a statute that controlled the circumstances of the employee. Again, the instant case is substantially different. The arbitrator did not rely upon an invalid provision of the parties' Agreement in reaching his decision.