## BUREAU OF EMPLOYEE RELATIONS

### v.

## AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 93 and Maine Labor Relations Board.

Supreme Judicial Court of Maine.

Argued June 4, 1992.
Decided Sept. 10, 1992.

Julie M. Armstrong (orally), Bureau of Employee Relations, Augusta, for plaintiff.

Judith A. Dorsey (orally), Maine Labor Relations Bd., Augusta, Stephen P. Sunenblick (orally), Sunenblick, Reben, Benjamin & March, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

The Bureau of Employee Relations appeals from a judgment of the Superior Court (Kennebec County, *Chandler, J.*) affirming a decision of the Maine Labor Relations Board in favor of the American Federation of State, County and Municipal Employees, Council 93 (AFSCME), that certain unilateral changes in the pay schedule of AFSCME employees violated the State Employees Labor Relations Act (SELRA), 26 M.R.S.A. §§ 979 to 979–Q (1988 & Supp. 1991). The Board ordered the Bureau to bargain collectively with AFSCME over the changes and to reinstitute the former pay schedule. Because the Board misinterpreted the collective bargaining agreement and misapplied its authority to order the parties to bargain collectively, we vacate the judgment and remand with instruction to enter a judgment vacating the Board's order.

In 1991 Governor John R. McKernan, Jr., in an attempt to reduce a projected $355 million state budget deficit for fiscal year 1992, implemented a plan to delay the biweekly paychecks of certain state employees. Under the plan, paychecks for five pay periods would be delayed by one day each period, increasing the lapse of time between each of those paydays from fourteen to fifteen days. When the Bureau refused to negotiate over the change, AFSCME filed a prohibited practice complaint with the Board alleging that the change violated the biweekly pay requirement of 5 M.R.S.A. § 10 (1989), which provides that all employees "shall be paid their salaries or wages biweekly." AFSCME also alleged that the Bureau's refusal to negotiate breached its duty under SELRA to bargain collectively and in good faith. *See* 26 M.R.S.A. §§ 979–C(1)(E), 979–D(1)(E).[1]

---

1. 26 M.R.S.A. § 979–D(1)(E) (1988 & Supp.1991) provides, in pertinent part, that:
   [I]t shall be the obligation of the public employer and the bargaining agent to bargain collectively. "Collective bargaining" means ... their mutual obligation:
   ....

   E. To confer and negotiate in good faith:
   (1) To confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration.... All matters relating to the relationship between the employer and employees shall be the subject of collective bargaining, except

The collective bargaining agreement contains two provisions relevant to the instant case, the Maintenance of Benefits article and the Embodiment of Agreement article ("zipper clause"). In the zipper clause the parties "voluntarily and unqualifiedly" waived the right to bargain collectively "with respect to any subject or matter referred to or not referred to, covered or not covered in this Agreement." Notwithstanding this broad waiver, the State agreed, in the Maintenance of Benefits article, to consult and negotiate with AFSCME before changing any *negotiable* benefits "presently provided pursuant to law." The Board determined that the change in pay dates without prior negotiation violated section 979–C(1)(E) of SELRA, which prohibits the State from "[r]efusing to bargain collectively with the bargaining agent of its employees as required by section 979–D." On the Bureau's complaint for direct judicial review, the Superior Court affirmed the Board's decision and this appeal followed.

I.

Pursuant to section 979–H of SELRA, the Board is given authority to prevent a party from "engaging in any of the prohibited acts enumerated in section 979–C." The Board concluded that the Bureau, in refusing to bargain collectively over the change in pay dates, had violated section 979–C(1)(E). The Board interpreted the Maintenance of Benefits article, notwithstanding the zipper clause, as preserving the *statutory* right to bargain over matters that *would have been* negotiable had they not been "presently provided pursuant to law." Thus since AFSCME had preserved its statutory right to bargain, the Board found that the Bureau's refusal to negotiate constituted a violation of SELRA and issued a cease and desist order. We reject the Board's interpretation of the article with regard both to the subject matters encompassed and the nature of the bargaining rights preserved in the article.

Under SELRA, a public employer may not bargain over matters "prescribed or those matters which are prescribed or con-

controlled by public law." See 26 M.R.S.A. § 979–D(1)(E)(1); *see also Bureau of Maine State Police v. Pratt,* 568 A.2d 501, 505 (Me.1989). The Board decided that 5 M.R.S.A. § 10 prescribes biweekly pay dates but adopted the interpretation that the issue remained subject to SELRA's mandatory bargaining provision because the pay dates *would have been* negotiable had they not been "presently provided pursuant to law." The Board's decision rests on the faulty premise that the phrase "presently provided pursuant to law" as used in the Maintenance of Benefits clause is equivalent to the "prescribed or controlled" language in section 979–C(1)(E) of SELRA. Because it found those phrases to have identical meanings and to avoid construing the article as a nullity, the Board interpreted the article in such a manner that the parties to a collective bargaining agreement could, through the bargaining process, bring within its provisions a matter prescribed or controlled by public law.

■ Our prior decisions make the Board's analysis of doubtful validity. *See, e.g., Maine School Admin. Dist. No. 61 Bd. of Directors v. Lake Region Teachers Ass'n,* 567 A.2d 77 (Me.1989); *Washburn v. State,* 432 A.2d 1237 (Me.1981); *Board of Directors of Maine School Admin. Dist. No. 36 v. Maine School Admin. Dist. No. 36 Teachers Ass'n,* 428 A.2d 419 (Me.1981) (all three cases supporting the proposition that a public employer cannot, in a collective bargaining agreement, voluntarily relinquish control of matters as to which negotiation is proscribed by SELRA). Contrary to the Board's conclusion, the phrase "presently provided pursuant to law" and SELRA's "prescribed or controlled" language are not two formulations of the same proposition. Rather, the latter establishes that matters specifically controlled by statute are binding on the parties and not subject to the statutory obligation to bargain collectively. In contrast, the former simply provides that those areas where the law affords some discretion in the establishment of a particular benefit will not trolled by public law.

be changed without negotiating the change with AFSCME. Thus the Board's construction of the article to the effect that the parties agreed to negotiate over any change in the biweekly pay dates prescribed by 5 M.R.S.A. § 10 involves a misconception of the parties' ability to bring the matter within the parameters of the agreement.

## II.

■ We need not decide whether section 10 affords some discretion in the establishment of pay periods, because in any event the Board's analysis of the proper remedy for refusal to negotiate over change in the benefits conflicts with our holding in *State v. Maine State Employees Ass'n,* 499 A.2d 1228 (Me.1985) (hereinafter *MSEA* ). In that case the Board ordered the State to bargain over the impact of three agency reorganizations. We observed in *MSEA* that the duty to bargain may have both a statutory and a contractual basis and that they "may exist independently and may differ in content." *Id.* at 1231. We noted, moreover, that while the Board has authority to remedy a breach of the statutory duty, a breach of the contractual duty "invoke[s] contract grievance rather than labor board action." *Id.* We then vacated the Board's order because the union, in the zipper clause, had completely waived any *statutory* right to bargain over the matter. *Id.* at 1232–33. Any reservation of bargaining rights in the Maintenance of Benefits article constituted contractual rights, enforceable through the collective bargaining agreement's grievance procedures. *Id.*

The instant case involves a zipper clause and a Maintenance of Benefits article substantially the same as those involved in *MSEA.*[2] Nevertheless, AFSCME attempts to distinguish *MSEA* and argues that the Maintenance of Benefits article in the instant contract preserves its *statutory* right to bargain. We do not find this attempted distinction persuasive. Contrary to AFSCME's contention, the zipper clause in the instant case is at least as broad as the one we considered in *MSEA.* In addition, the Maintenance of Benefits provision, which we determined to reserve contractual rights in *MSEA,* is almost identical to that in the instant contract. Thus our holding in *MSEA* mandates a similar outcome in this case, i.e., that AFSCME waived its statutory rights to bargain collectively.

## III.

■ The Board also concluded that the change in pay dates fell within SELRA's prohibition against interference with "the free exercise of any ... right under ... chapter [9–B of title 26]."[3] *See* 26 M.R.S.A. §§ 979–B, 979–C(1)(A). Because 5 M.R.S.A. § 10 is not a right under chapter 9–B, a violation of section 10, assuming the conduct at issue to be one, does not come within the reach of section 979–B. Thus the Board also erred in asserting its authority based on a violation of section 979–C(1)(A).

The entry is:

Judgment vacated.

Remanded to the Superior Court with instruction to enter a judgment vacating the order of the Maine Labor Relations Board.

All concurring.

**2.** The waiver clause in *MSEA* stated:
> Each party agrees that it shall not attempt to compel negotiations during the term of this Agreement on matters that could have been raised during the negotiations that preceded this Agreement, matters that were raised during the negotiations that preceded this Agreement or matters that are specifically addressed in the Agreement.

*State v. Maine State Employees Ass'n,* 499 A.2d 1228, 1230 (Me.1985).
> The Maintenance of Benefits provision in *MSEA* stated, in pertinent part:

> With respect to negotiable wages, hours and working conditions not covered by this Agreement, the States agrees to make no changes without appropriate prior consultation and negotiations with the Association....

*Id.* at 1231.

**3.** Section 979–C(1)(A) prohibits the State from "[i]nterfering with, restraining or coercing employees in the exercise of the rights guaranteed in section 979–B."